UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| LARRY J. CAFFIE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-00487-WTL-DLP |
| | ) | |
| JEFFREY KRUEGER, | ) | |
| | ) | |
| Respondent. | ) | |

**Order Denying Government's Motion to Reconsider or, in the Alternative, for an Extension of Time to Move to Reconsider, and
Denying as Moot Petitioner's Motion Opposing Respondent's Petition to Reconsider**

Having previously conceded to the Court that petitioner Larry Caffie's petition for relief pursuant to 28 U.S.C. § 2241 should be granted, the Government has now changed its mind and asks the Court to reconsider its January 25, 2019, Order, Dkt. No. 41, or in the alternative, provide the Government with an extension of time to further develop its newly raised legal arguments for a motion to reconsider. Dkt. No. 46.

The Court is surprised that the Government would even file such a motion and expect it to be well received. As explained in more detail below, the Government's motion is meritless. Reconsideration is not warranted merely because the Government has now changed its mind. "This is a busy Court that, of course, prefers to focus its efforts on motions that at least arguably have merit." *See Australian Gold, LLC v. Devoted Creations, LLC*, No. 1:13-cv-00971-JMS, 2013 WL 5366360, at *2 (S.D. Ind. Sept. 25, 2013).

## I. Procedural Background

On October 20, 2017, petitioner Larry Caffie filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 arguing that his prior Illinois drug convictions should not

have been used to impose a mandatory life sentence pursuant to 21 U.S.C. § 841 given the Supreme Court's decision in *Mathis v. United States*, 136 S. Ct. 2243 (2016).

On October 27, 2017, the Court directed the respondent to respond to Mr. Caffie's petition by December 22, 2017. Dkt. No. 4. On December 18, 2017, the Government requested an extension to February 22, 2018, to respond. Dkt. No. 8. On February 22, 2018, the Government filed a motion to stay pending Mr. Caffie's Sixth Circuit appeal in *Caffie v. Warden, Terre Haute FCI*, No. 17-6441 (6th Cir. 2017). Dkt. No. 12.

The case was stayed until March 16, 2018, when Mr. Caffie requested that proceedings resume. Dkt. No. 20. On March 29, 2018, the Government filed its Return to the Order to Show Cause. Dkt. No. 21. Mr. Caffie filed his reply on April 19, 2018. Dkt. No. 24.

On October 2, 2018, Mr. Caffie filed a motion to supplement his reply, advancing new arguments and citing new authority that were previously unavailable to him. Dkt. No. 27. Among other arguments, Mr. Caffie argued that Illinois's definition of "cocaine" was broader than the federal definition of "cocaine" because the Illinois definition included positional isomers. In support, he cited the Ninth Circuit's holding in *Lorenzo v. Sessions*, 902 F.3d 930, 934-35 (9th Cir. 2018) ("*Lorenzo* I") that the California definition of methamphetamine was overly broad compared to the federal definition because California law includes "optical and geometrical isomers," whereas the Controlled Substances Act includes only optical isomers.

On October 15, 2018, the Court granted Mr. Caffie's motion to supplement and directed further briefing from the Government. Dkt. No. 28.

On November 16, 2018, the Government requested its first extension to December 16, 2018. Dkt. No. 29. The Government again sought an extension on December 12, 2018, to January

2

16, 2019. Dkt. No. 35. Finally, on January 15, 2019, the Government filed its final extension to January 25, 2019, Dkt. No. 40, which the Court again granted.

On January 17, 2019, the Ninth Circuit withdrew its opinion in *Lorenzo* I, replacing it with an unpublished memorandum disposition. *Lorenzo v. Whitaker*, No. 15-70814, 2019 U.S. App. LEXIS 1544 (9th Cir. Jan. 17, 2019) (withdrawing *Lorenzo* I); *Lorenzo v. Whitaker*, No. 15-70814, 2019 U.S. App. LEXIS 1599 (9th Cir. Jan. 17, 2019) ("*Lorenzo* II"). The Ninth Circuit, in *Lorenzo* II, concluded the following:

> Applying the first step in this analysis here, we conclude the definition of "methamphetamine" applicable to convictions under California Health & Safety Code §§ 11378 and 11379(a) is broader than the definition of methamphetamine under the federal Controlled Substances Act, 21 U.S.C. § 812. The California definition includes both optical and geometric isomers of methamphetamine, whereas the federal definition includes only optical isomers of methamphetamine. Compare Cal. Health & Safety Code § 11033, with 21 U.S.C. §§ 802(14), 812 Schedule II(c), Schedule III(a)(3). Accordingly, California law is facially overbroad. *See Martinez-Lopez*, 864 F.3d at 1038.
>
> Because this mismatch between the federal and state statutes is apparent on the face of the statutes, such that no rational interpretation of either statute would reconcile the two, Lorenzo is not required to "point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007); *see United States v. Vidal*, 504 F.3d 1072, 1082 (9th Cir. 2007) (en banc) ("[W]hen '[t]he state statute's greater breadth is evident from its text,' a defendant may rely on the statutory language to establish the statute as overly inclusive." (citation omitted)); *United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007) (en banc) ("Where, as here, a state statute explicitly defines a crime more broadly than the generic definition, no 'legal imagination,' is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime. The state statute's greater breadth is evident from its text." (citation omitted)), abrogated on other grounds by *United States v. Stitt*, 139 S. Ct. 399 (2018).
>
> In its petition for panel rehearing, the government contends the facial overbreadth in California law is of no significance because geometric isomers of methamphetamine do not in fact exist. The government also asks us to take judicial notice of evidence presented in a different case to support that new assertion. We reject these entreaties. First, "[a]s a general rule, we will not consider issues that a party raises for the first time in a petition for rehearing," *United States v. Mageno*,

3

> 786 F.3d 768, 775 (9th Cir. 2015) (quoting *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1397 (9th Cir. 1988)), or during oral argument, *see In re Pac. Pictures Corp.*, 679 F.3d 1121, 1130 (9th Cir. 2012). Second, our review generally is limited to the information in the administrative record. *See Fisher v. INS*, 79 F.3d 955, 963 (9th Cir. 1996) (en banc). The government could have raised its argument about theoretical impossibility in this court, but it did not timely do so. We do not foreclose the government from presenting its new argument or new evidence in another case.

*Lorenzo* II, 2019 U.S. App. LEXIS 1599, at *4-6.

On January 25, 2019, the Government filed its response to Mr. Caffie's supplemental briefing agreeing that Mr. Caffie's petition should be granted. As to *Lorenzo*, the Government provided, relevantly, the following analysis:

> The government sought panel rehearing [of *Lorenzo* I], contending that the overbreadth in California law was irrelevant because geometric isomers of methamphetamine do not in fact exist. *Lorenzo v. Whitaker*, -- F. App'x --, 2019 WL 248978, at *2 (9th Cir. Jan. 17, 2019). The panel rejected that claim because the government had no[t] raised the issue prior to rehearing. *Id*.
>
> *Lorenzo*'s logic does appear facially applicable to here. Because of the scientific complexity of the underlying issue, the Southern District of Indiana reached out to the Department of Justice for consultation. However, owing to the government shutdown, the Department was unable to provide a position on this particular issue, short of what the government had argued in *Lorenzo*. Thus, while the government does not take the overall position that *Lorenzo* was correctly decided or that Illinois's definition of cocaine is overly broad, at this point in time under *Lorenzo*, Caffie has made a sufficient showing that his offense was not a "felony drug offense."
>
> …
>
> For the reasons stated above, Caffie's petition for a writ of habeas corpus should be granted.

Dkt. No. 40 at 9-10.

Although the Court does not find it relevant, the United States Federal Government was shut down from December 22, 2018, to January 25, 2019 – the same day as the Government's filing in this action.

4

## II. Legal Standard for Motion to Reconsider

"Motions to reconsider are not explicitly provided for in the Federal Rules of Civil Procedure … , but filing them is a common practice in many district courts." *Entm't USA, Inc. v. Moorehead Commc'ns, Inc.*, 897 F.3d 786, 795 (7th Cir. 2018). The Government's motion to reconsider was filed within 28 days of the date judgment was entered in this action. It is therefore treated as a motion to amend judgment pursuant to Rule 59 of the *Federal Rules of Civil Procedure.*

Rule 59(e) allows a court to amend a judgment only if the movant can "demonstrate a manifest error of law or fact or present newly discovered evidence." *Lightspeed Media Corp. v. Smith*, 830 F.3d 500, 505–06 (7th Cir. 2016) (internal citations omitted). A "manifest error" means "the district court commits a wholesale disregard, misapplication, or failure to recognize controlling precedent." *Stragapede v. City of Evanston, Illinois,* 865 F.3d 861, 868 (7th Cir. 2017) (internal quotation omitted). "A manifest error is not demonstrated by the disappointment of the losing party." *Oto v. Metropolitan Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000) (internal quotations omitted). Relief through a Rule 59(e) motion for reconsideration is an "extraordinary remed[y] reserved for the exceptional case." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008).

A motion to reconsider is not an occasion to make new arguments. *See Oto*, 224 F.3d at 606 ("A party may not use a motion for reconsideration to introduce new evidence that could have been presented earlier."). "Motions to reconsider 'are not replays of the main event.'" *Dominguez v. Lynch*, 612 Fed. Appx. 388, 390 (7th Cir. 2015) (quoting *Khan v. Holder*, 766 F.3d 689, 696 (7th Cir. 2014)). A motion to reconsider "is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the

previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269-70 (7th Cir. 1996).

### III. Discussion

The entirety of the Government's motion to reconsider is premised on its claim that "new arguments have come to light following the government shutdown." Dkt. No. 46 at 1. Apparently, once the shutdown ended, it was discovered that the Government's January 25, 2019, brief was "contrary to the Department [of Justice's] broader position." *Id.* at 4.

Nothing the Government has provided in its motion demonstrates a manifest error of law or fact or presents newly discovered evidence. All of its arguments could have been, should have been, or were already raised in its initial January 25, 2019, response to the Court's Order. Its attempts to argue otherwise and fit its motion within the purview of Rule 59 are off base.

First, the Government tries to blame its change of opinion on the Government shutdown, arguing that it "hoped not to have to concede but ultimately had to do so (and did so in very noncommittal terms, given the complex science at issue) because of circumstances related to the government shutdown." Dkt. No. 46 at 17. But the Court fails to understand how the Government was somehow forced to make any concession. This is not a case where the Court strictly held the Government to the time limits set forth in 28 U.S.C. § 2243: "[the return to the Order to Show Cause] shall be returned within three days unless for good cause additional time, not exceeding twenty days, is allowed." Rather, the Court generously granted an extension each time that the Government requested one. Indeed, the Government requested a ten-day extension of time during the pendency of the shutdown which the Court granted. If the Government needed more time to consider its position, it could have requested yet another extension of time. But it inexplicably failed to do so.

Second, the Government argues that following the Government's shutdown, new arguments somehow came to light. *See* Dkt. No. 46 at 1, 10-16. The Government's new argument is almost entirely focused on the idea that although Illinois defines cocaine to include "positional isomers," such isomers likely do not exist and are a theoretical impossibility. But this argument is almost identical to the Government's position in *Lorenzo*, except applied to cocaine instead of methamphetamine. Surely, the Government could have explored the possibility of this argument prior to its January 25 submission.

Moreover, the Government's position is premised on discussions with the Drug Enforcement Administration (DEA), who "is not prepared to offer a formal position on the existence and nature of positional isomers of cocaine," and "experts" who "informally offered their view that cocaine, isolated from nature (from the coca plant), does not contain any positional isomers; those experts added, again provisionally, that they are aware of no reports of any positional isomers of cocaine having been isolated." Ignoring the fact that the Government has failed to actually show that positional isomers do not exist, the Court does not need to consider or make any ruling as to whether positional isomers of cocaine exist, whether the Court may ignore Illinois' explicit inclusion of positional isomers in its definition of "cocaine," and whether Mr. Caffie has a burden of proving that positional isomers of cocaine exist. This is because the Government raised these arguments for the first time in a motion to reconsider and has therefore waived them. *See Baker v. Lindgren,* 856 F.3d 498, 503 (7th Cir. 2017) (citing *Brooks v. City of Chi.*, 564 F.3d 830, 833 (7th Cir. 2009)) ("arguments raised for the first time in a motion to reconsider are waived.").

Third, the Government argues that "the legal landscape has changed substantially since the court entered its judgment in this case." *Id.* at 16 (citing the de-publishing of *Lorenzo* I on January

17, 2019). This is false. The Government argues that *Lorenzo* I has been de-published, and although the Government "cited *Lorenzo* in its response[,] now, that case offers no authority on which the Court should reasonably rely." *Id.* But *Lorenzo* I was already de-published a week prior to when the Government cited to it. Moreover, the Government cited to the opinion, *Lorenzo* II, issued contemporaneously with the withdrawing and de-publishing of *Lorenzo* I. The Court is troubled by the Government's improper characterization that the legal landscape changed *substantially* when it had not changed at all, and, to the extent it changed at all, it did so *prior* to the Government's response.

Finally, the Government requests that:

> If the Court is not inclined to reconsider its judgment based on the arguments the government has been able to develop thus far, the government respectfully requests an extension of the reconsideration period sufficient to develop firmer answers in aid of the Court reaching the correct result in this case.

Dkt. No. 46 at 18. The Federal Rules of Civil Procedure explicitly prohibit the Court from providing an extension of time for motions under Rule 59(e). *See* Fed. R. Civ. P. 6(b)("A court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b)."). The Government does not get second passes and continuous extensions, as it desires, to bring new arguments. To the extent it disagrees or is unhappy with the Court's holding, the Government should appeal the Court's orders, not file meritless motions to reconsider.

## IV. Conclusion

For the reasons explained above, the Government's motion for reconsideration, or in the alternative, for an extension of time to move to reconsider, Dkt. No. 46, is **denied**. Mr. Caffie's motion opposing any petition to reconsider, Dkt. No. 45, is **denied as moot** given the Court's ruling.

8

One final and important note: Mr. Caffie's address has been updated on the docket since December 14, 2018, yet the Government persists in sending copies of its filings to Mr. Caffie at the wrong address. Compounding its error, the Government provided an affirmative misstatement to the Court, stating "Caffie is an inmate currently housed at the Federal Correctional Institution in Terra Haute, Indiana." He is not.

The Government **shall serve** Mr. Caffie with any and all filings he has not received as a result of the Government's error within three days of the date this Order is docketed.

**IT IS SO ORDERED.**

Date: 2/26/2019

*William T. Lawrence*

Hon. William T. Lawrence, Senior Judge
United States District Court
Southern District of Indiana

Distribution:

LARRY J. CAFFIE
13472-026
AUSP THOMSON USP
Satellite Camp
P.O. Box 1002
Thomson, IL 61285

Brian L. Reitz
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
brian.reitz@usdoj.gov

James Robert Wood
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
bob.wood@usdoj.gov